IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMAAR BLAKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-1332 |
| | ) | Judge Ambrose |
| CITY OF PITTSBURGH POLICE, *et al*., | ) | Magistrate Judge Bissoon |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Defendants' Motion for Summary Judgment (Doc. 32) be granted in part and denied in part.

### II. REPORT

Jamaar Blakey is a federal prisoner serving a sentence for illegal possession of a weapon. The criminal charges against Blakey arose from a confrontation with Pittsburgh Police during the early morning hours of October 30, 2006, during which Blakey was shot twice. Blakey has filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 asserting: (1) the deadly use of force; (2) attempted murder; (3) malicious prosecution; (4) defamation of character; and (5) negligent supervision (Doc. 3, p. 1). All of this, he alleges, is a violation of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

Defendants (the City of Pittsburgh Police Department, Sergeant Anthony Viscomi, Sergeant Kevin Wilson and Commander Thomas Strangrecki) have filed a Motion for Summary Judgment (Doc. 32). Plaintiff has responded (Doc. 37) and the Motion is ripe for disposition.

A.  **Legal Standard**

A party's burden in response to a well-pleaded motion for summary judgment is to present ". . . specific facts showing that there is a *genuine issue for trial*." Fed. Rule Civ. Proc. 56(e) (emphasis added). If the non-moving party cannot so demonstrate the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence, viewed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id., at 251-52.

B.  **Facts**

Jamaar Blakey was drinking at the Black Door in the Mt. Oliver section of the City of Pittsburgh in the early morning hours of October 30, 2006 (Doc. 35-1, pp. 2-3). Blakey went to his car shortly before 3 a.m. to avoid some people he did not get along with, and he then saw a car approaching he believed had cut him off earlier in the evening (Doc. 35-1, pp. 3-4). Blakey attempted to elude the car, ran a stop sign, went the wrong way on a one-way street, and then hit another stop sign, at which point Blakey noticed that the car following him was a police car (Doc. 35-1, p. 5). Blakey tried to drive off, but struck a fence (Doc. 35-1, p. 6). He grabbed a loaded .45 caliber semiautomatic handgun, exited the car, and began running away from police (Doc. 35-1, pp. 6-7). Plaintiff ran about 30 feet from his car when he was shot twice, once in the back of the head and once in the back (Doc. 3, p. 2; Doc. 35-1, p. 8). Plaintiff denies having

2

pointed his weapon at officers, and denies turning towards the officers until after he was shot (Doc. 35-1, pp. 10-11).

Blakey was charged with two counts of aggravated assault, two counts of recklessly endangering another person, and one count each of person not to possess a firearm, carrying a firearm without a license, and fleeing or eluding police (Doc. 3, p. 2).  Bond was set at $50,000, which he posted in March, 2007 (Doc. 35-1, p. 38).  Blakey's state court charges were later dropped in favor a federal prosecution for weapons possession, and he presently is incarcerated on the sentence imposed for his federal conviction (Doc. 35-1, pp. 39-41).

    C.    <u>Analysis</u>

### 1. Excessive Force/Qualified Immunity – Defendant Viscomi

Plaintiff's first claim is that Sergeant Viscomi used excessive force in making the arrest.  Viscomi moves for summary judgment asserting both that he was justified in using force, and, in the alternative, that he is entitled to qualified immunity for his actions.

In <u>Tennessee v. Garner</u>, 471 U.S. 1, 7 (1985), the Supreme Court held that use of deadly force constitutes a seizure that must be evaluated for reasonableness under the Fourth Amendment.  An officer may use deadly force to prevent escape if the officer has probable cause to believe that the suspect poses a threat of serious physical harm to the officer or to others.  <u>Brosseau v. Haugen</u>, 543 U.S. 194, 197-98 (2004).  However, use of deadly force is not reasonable to prevent a felony suspect from escaping where the fleeing suspect poses no immediate threat.  <u>Garner</u>, 471 U.S. at 11-12.  In short, officers are not constitutionally authorized to seize an unarmed, non-dangerous suspect by shooting him.  <u>Id</u>.  While the Fourth Amendment inquiry focuses on the perspective of a reasonable officer at the scene, all factual

inferences at the summary judgment stage must be drawn in the light most favorable to Plaintiff, as the nonmoving party. Anderson, supra.[1]

"Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, --- U.S. ----, 129 S.Ct. 808, 815 (2009). The doctrine provides a government official immunity from suit rather than a mere defense to liability, and, thus, the issue of qualified immunity should be addressed at the earliest possible stage in litigation. Id.

Because Viscomi utilized deadly force, the test to be applied is whether, "giving due regard to the pressures faced by the police, [it was] objectively reasonable for the officer to believe, in light of the totality of the circumstances, that deadly force was necessary to prevent the suspect's escape, and that the suspect posed a significant threat of death or serious physical injury to the officer or others[.]" Abraham v. Raso, 183 F.3d 279, 289 (3d Cir. 1999). The facts to be considered are: (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest. Id. (quoting Graham, 490 U.S. at 109). The officer's underlying motive is irrelevant. See Estate of Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003).

---

[1] The state court charges for aggravated assault arose from Sergeant Viscomi's report that he shot Blakey only after Blakey began turning toward him, and began to raise his weapon. Of course, this factual scenario, if accepted by a fact finder, would clearly justify Viscomi's use of deadly force. See Neuburger v. Thompson, 124 Fed.Appx. 703 (3d Cir. 2005) (state trooper who responded with deadly force when woman refused to follow directions to put down her weapon and instead pointed handgun at officer did not violate her Fourth Amendment right to be free from excessive use of force). At the summary judgment stage, however, the Court must focus on the facts in the light most favorable to Plaintiff.

In this case, consistent with Plaintiff's version of events, the Court will accept that Blakey engaged in an attempt to evade police, drove the wrong way on a one-way street, ran into a stop sign and ultimately disabled his car by ramming into a fence. Further, Plaintiff then exited his car with a handgun in his right hand and began to run away from police. It was at this point that Viscomi fired two shots, striking Plaintiff from behind. There is no indication in the record that there were other people in the area, or that Plaintiff had engaged in any assaultive behavior.

While it is relevant that Blakely visibly possessed a weapon, and that he was fleeing police, the mere possession of a weapon is not sufficient to support a finding that a suspect poses an immediate threat. For example, in Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002), the Third Circuit reiterated that deadly force was constitutionally inappropriate where plaintiff's decedent, who was armed, had stopped advancing toward the state troopers and was not pointing a gun at them when he was shot. Id. at 136. Also instructive is Sonnier v. Field, 2007 WL 576655 (W.D. Pa., Feb.1, 2007) (McVerry, J.), where the officer fired at a suspect who tried to hit him with a vehicle, but the officer fired only after the vehicle passed him. Judge McVerry found that summary judgment was not appropriate for the officer with respect to the issue of whether deadly force was justified "because the law is clear that deadly force cannot be used on a fleeing suspect who does not pose a danger. At trial, Officer Field will have a full opportunity to convince the factfinder that he had probable cause to believe that Sonnier posed a danger to himself or others such that his use of deadly force was reasonable." Id., at *7. Thus, mere flight, with or without a weapon, is not sufficient to justify the use of deadly force.

The dispositive determination with respect to whether Officer Viscomi was justified in using deadly force, namely, whether Blakey posed an immediate threat of serious harm to the officers or others, is one that cannot be made on this record. While Blakey's possession of a

5

firearm and flight are relevant factors to be considered, counterbalancing considerations are that Blakey had not engaged in violent behavior and was not being pursued for a violent crime. In short, other than his visible possession of a weapon and flight, there is no indication in the record that Plaintiff posed a threat to anyone when Viscomi made the decision to shoot. Without further facts concerning the potential risk posed by Plaintiff, the Court cannot find that Plaintiff posed a "significant threat of death or serious physical injury to the officer or others" Abraham, supra, and, therefore, must deny Defendant Viscomi's Motion for Summary Judgment.

### 2. Malicious Prosecution

Plaintiff alleges that Defendants Viscomi and Wilson made false accusations concerning his pointing a gun in their direction. He alleges that Defendants maliciously prosecuted him in the state courts on the basis of this alleged falsehood (Doc. 37, pp. 7-8). The elements of a Section 1983 malicious prosecution claim are as follows:

> (1) the defendant [in the malicious prosecution civil suit] initiated a criminal proceeding;  (2) the criminal proceeding ended in plaintiff's favor;  (3) the proceeding was initiated without probable cause;  (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Camiolo v. State Farm Fire and Cas. Co., 334 F.3d 345, 362-3 (3d Cir. 2003); Lipay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993) ("We have recognized such a claim [i.e., a malicious prosecution claim] under section 1983, so long as the plaintiff proves the existence of the elements of the common law tort of malicious prosecution.").

The only state criminal charges filed against Blakey that he claims are false are the charges of assault and reckless endangerment. These are the claims that arose from the allegedly false accusation that Blakey pointed his gun at Defendants Viscomi and Wilson. Blakey does

6

not contest that he was properly stopped for traffic violations, and then properly arrested for and charged with illegally possessing a weapon.  Plaintiff was charged and held in custody by the state courts not just for having pointed his weapon at police, but also for illegally possessing a firearm and fleeing police, charges he concedes were based on probable cause.  Therefore, Plaintiff cannot establish at least two elements of a claim for malicious prosecution because: (1) the criminal proceeding in this case clearly was initiated **with** probable cause with respect to at least two of the charges; and (2) Plaintiff would have been incarcerated on the weapons charge in any event, so he did not suffer a deprivation of liberty from the allegedly false charges.  Defendants are entitled to summary judgment with respect to the claim for malicious prosecution.

        **3.**      **Supervisory liability**

Defendant City of Pittsburgh Police Department asserts, first, that it is not a proper party because it has no corporate existence separate from the City of Pittsburgh.  Anticipating that this would merely result in Plaintiff requesting leave to amend the Complaint, Defendants also argue that Plaintiff has not presented facts from which municipal liability can be imposed.

Municipal entities, like the City of Pittsburgh, can only be liable in a civil rights action if the alleged unconstitutional action implemented or executed "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers [or] is visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels."  Monell v. Department of Social Services, 436 U.S. 658, 690-91 (1977).  A custom, which lacks the formal approval of a policy, can be established by evidence showing "practices . . . so permanent and well settled as to constitute 'custom or usage' with the force of law."  Id. at 690.  In Simmons v. City of Philadelphia, 947

F.2d 1042 (3d Cir. 1991), cert. denied, 503 U.S. 985 (1992), the court held that a municipal entity may be found liable for Section 1983 violations where "officials determined . . . to be the responsible policymakers" were aware of the alleged practice of their subordinates, as well as alternatives to such practices, and that they "either deliberately chose not to pursue these alternatives or acquiesced in a long standing policy or custom of inaction in this regard." Simmons, 947 F.2d at 1064.

A supervising public official has no affirmative duty to supervise and discipline to prevent violations of constitutional rights by his or her subordinates. However, when a supervising official knowingly permits a continuing custom or policy that results in harm to the plaintiff, Section 1983 liability may attach. Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir.1988), cert. denied, 489 U.S. 1065 (1989). At a minimum, such liability may be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." Id.

In this case, Plaintiff complains that there was an inadequate investigation of the shooting in this case, and that the City of Pittsburgh Police Department did not even interview him before believing their officers. A failure to investigate may provide a means of establishing municipal liability. Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995); San Filippo v. Bongiovanni, 30 F.3d 424, 445-46 (3d Cir. 1994). The question is not whether an investigation was conducted in this case, or whether any investigation actually conducted was done in good faith, the question is whether the City of Pittsburgh's investigatory and disciplinary procedures constituted a "municipal policy" of deliberate indifference toward the risks of police misconduct,

and specifically whether such a policy proximately caused the improper use of excessive force in this case. Groman, 47 F.3d at 637. Plaintiff has presented nothing beyond his assertion that the investigation in this case was inadequate. In this respect, the Supreme Court has ruled that "a single incident of unconstitutional activity is not sufficient to impose liability under Monell." Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). Rather, the law requires multiple prior instances of a failure to investigate before a municipality is deemed to have developed a policy or custom. See Groman, 47 F.3d at 637. The City of Pittsburgh Police Department (or the City of Pittsburgh) is, therefore, entitled to summary judgment on Plaintiff's claim of municipal liability.

### 4.     State law claims

Plaintiff's state law claims for defamation against Defendant Strangecki and negligent supervision against the City of Pittsburgh Police Department are barred by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8541. The Act provides that a local agency is not liable for any damages for personal injury caused by an act of the local agency or an employee thereof unless the injury falls into one of the following exceptions: vehicle liability; care, custody, or control of personal property; real property; trees, traffic controls and street lighting; utility service facilities; streets; sidewalks; and care, custody, or control of animals. Id. § 8542(b)(1)-(8). Employees of local agencies are entitled to the same immunity from suit for actions taken within the scope of their employment. Id., § 8545. Plaintiff's claims do not fit within any of the enumerated exceptions, and his state law claims are barred.

### III     CONCLUSION

For the reasons set out in this Report and Recommendation, it is respectfully recommended that Defendants' Motion for Summary Judgment (Doc. 32) be granted in part and

denied in part.  More specifically, the only claim that should remain in this case is Plaintiff's claim against Defendant Viscomi for excessive force during an arrest.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation are due by March 18, 2010.


March 3, 2010                                                s/Cathy Bissoon
                                                             CATHY BISSOON
                                                             UNITED STATE MAGISTRATE JUDGE



**Cc:**
JAMAAR A. BLAKEY
08159068
BIG SANDY
USP Big Sandy
U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 2068
INEZ, KY 41224